# PEREZ DEPOSITION PAGES

1     Armeno, no.

2         Q     All right, if you look at Exhibit 14, it's a

3     letter from Joseph Ganim to you dated March 1, 2016.  Are

4     you familiar with this letter?

5         A     Yes, I am.

6         Q     And attached to it are a couple of documents;

7     there's the letter to the city clerk indicating that you've

8     been appointed acting chief and the oath of the office.

9     Prior to being appointed on March 1, 2016 had you discussed

10    your appointment as acting chief with the mayor of the City

11    of Bridgeport?

12                    MR. FROST:  Objection, instruct the witness

13                    not to respond on the grounds of his Fifth

14                    Amendment privilege.

15    BY MR. BUCCI:

16        Q     At the time of your appointment as assistant chief

17    did you discuss with the mayor about being appointed

18    permanent chief?

19                    MR. FROST:  Same objection, same instruction;

20                    witness should be instructed not to answer on the

21                    grounds of his Fifth Amendment privilege.

22    BY MR. BUCCI:

23        Q     Chief, Exhibit 15 is a letter from you to

24    Ms. Randi Frank.  Do you know who Ms. Randi Frank is?

25        A     Yes, I do.

1       Q    And who is Ms. Frank?

2       A    She was the person conducting the search for chief

3  of police.

4       Q    And that was the most current chief of police

5  selection process?

6               MR. FROST:  Object to the form.

7               MR. BUTURLA:  Same objection.

8  BY MR. BUCCI:

9       Q    Chief, Ms. Randi Frank you said was overseeing the

10  selection process for chief of police?

11       A    She was.

12       Q    Was that the process that was used with regard to

13  your selection as chief of police?

14       A    Yes, it was.

15       Q    And was this your initial communication with

16  Ms. Frank about your interest in applying for the Bridgeport

17  Police Department?

18               MR. FROST:  Object to the question and

19               instruct the witness not to respond on the grounds

20               of his Fifth Amendment privilege.

21  BY MR. BUCCI:

22       Q    Exhibit 15 is your letter, Chief.  Do you

23  recognize it?

24               MR. FROST:  Object to the question, instruct

25               the witness not to respond on the grounds of his

```
 1                  Fifth Amendment privilege.
 2      BY MR. BUCCI:
 3          Q    Chief, did you receive assistance in preparing
 4      this letter?
 5                  MR. FROST:  Same objection and same
 6                  instruction; witness should not respond on the
 7                  grounds of his Fifth Amendment privilege.  That's
 8                  my instruction.
 9      BY MR. BUCCI:
10          Q    Chief, how long were you a captain as of June 10,
11      2018 or how long were you a captain at the time you were
12      appointed acting chief of police?
13          A    I think four years.
14          Q    Were you a captain longer than Captain Porter?
15                  MR. BUTURLA:  When?  I'm sorry.
16                  MR. BUCCI:  When he was appointed assistant
17                  police chief.
18                  MR. BUTURLA:  He wasn't appointed police
19                  chief.
20                  MR. BUCCI:  Excuse me, when he was appointed
21                  acting police chief on March 1, 2016.
22      BY MR. BUCCI:
23          Q    How long had you been a captain?
24          A    I believe it was -- I think it was like four
25      years.
```

1       Q     And as of March 1, 2016 was Captain Porter a

2    captain longer than you?

3       A     Yes, he was.

4       Q     Were you a resident of the city of Bridgeport at

5    the time you applied for the position of police chief?

6       A     I was not.

7       Q     Do you know if Captain Porter was a resident of

8    the city of Bridgeport when he applied for the position of

9    police chief?

10      A     Yes, he is.

11      Q     I asked you about Captain Porter's educational

12   background and you didn't know whether he had a college

13   degree or an advanced degree.  Do you have a college degree?

14      A     I do not.

15      Q     Do you have an advanced degree?

16      A     I do not.

17      Q     Chief, if you take a look at Exhibit 17, do you

18   recognize this document?

19                  MR. FROST:  Objection, instruct the witness

20                  not to answer on the grounds of his Fifth

21                  Amendment privilege.

22   BY MR. BUCCI:

23      Q     Chief, this appears to be the initial ranking of

24   the candidates for chief of police, and there appears to be

25   eight candidates who passed and three who did not pass; you

1    were one who passed and Rod Porter, Roderick Porter, was

2    another one who had passed.  In preparing the initial

3    submissions to Ms. Frank, had you received any assistance in

4    the preparation of those documents?

5              MR. FROST:  I'll object to the form if that

6              was all one question and also object and instruct

7              the witness not to respond on the grounds of his

8              Fifth Amendment privilege.

9              MR. BUTURLA:  I also will object as to form.

10   BY MR. BUCCI:

11      Q    Chief, if you look at Exhibit 16, it is a letter

12   from Mayor Ganim to Chief Armando J. Perez dated November 6,

13   2018, and the first paragraph reads, "In my capacity as

14   Mayor and pursuant to the authority vested in me by law,

15   including but not limited to Bridgeport City Charter,

16   Chapter 13, § 4(b)(4), I am both pleased and proud to hereby

17   appoint you as the Chief of Police for the City of

18   Bridgeport, Connecticut to serve a term of five (5) years

19   from the date of this appointment, effective immediately."

20   Did you discuss this appointment with Mayor Ganim before

21   November 6, 2018?

22             MR. FROST:  Objection and instruct the

23             witness not to respond on the grounds of his Fifth

24             Amendment privilege.

25

1    BY MR. BUCCI:

2        Q    Did the mayor of Bridgeport prior to November 6,

3    2018 make a commitment to you that he was going to appoint

4    you chief of police?

5                 MR. FROST:  Same objection and same

6                 instruction; instruct the witness not to respond

7                 on the grounds of his Fifth Amendment privilege.

8    BY MR. BUCCI:

9        Q    Chief, I'm going to ask you to go back to

10   Exhibit 12.  I'm going to ask you to go to page 6.  Page 6

11   Subparagraph B reads, "On or about March 1, 2016 after the

12   former Chief of Police resigned, the Mayor appointed PEREZ

13   to serve as the Acting Chief of Police until the position

14   was filled in accordance with the City's Charter.  As

15   detailed herein, in or about November 2018, after the City

16   held a purportedly open and competitive examination process

17   for the position, and after PEREZ was certified as one of

18   the top three candidates, the Mayor appointed PEREZ to serve

19   as the Chief of Police."  Is that an accurate statement?

20                 MR. FROST:  Objection, instruct the witness

21                 not to respond on the grounds of his Fifth

22                 Amendment privilege.

23   BY MR. BUCCI:

24       Q    Chief, on page 7, Number 15 reads, "On or about

25   February 26, 2018, the Mayor sent DAVID DUNN, the defendant,

1     a letter instructing DUNN, in his role as the Personnel

2     Director, to initiate an open and competitive examination

3     for the position of Chief of Police as required under the

4     City's Charter, and to then certify to the Mayor, within

5     150 days of the request, the three highest scoring

6     candidates from that examination as also provided for by the

7     City's Charter."  Is that a true or false statement, Chief?

8                 MR. FROST:  Objection, instruct the witness

9              not to respond on the grounds of his Fifth

10             Amendment privilege.

11    BY MR. BUCCI:

12      Q    Chief, on page 8, Number 20 it indicates that

13   based upon -- well, excuse me.  It indicates that "... the

14   City Charter in fact had four stages that Consultant-1

15   administered:  Stage 1 - A review of candidates' résumés and

16   cover letters; Stage 2 - A written exam made up of a

17   questionnaire and two essay questions; Stage 3 - A

18   telephonic oral exam conducted by Consultant-1; and

19   Stage 4 - A panel interview conducted by five independent

20   panelists."  Is that accurate?  Were there four stages to

21   the selection process for police chief?

22               MR. FROST:  Objection and instruct the

23            witness not to answer on the grounds of his Fifth

24            Amendment privilege.

25

1    BY MR. BUCCI:

2        Q    On page 9 Paragraphs 25, 26 and 27 states that

3    "... on or about May 21, 2018, Consultant-1 ..." and I'll

4    put in there let's assume Consultant-1 is Randi Frank

5    "... sent DAVID DUNN, the defendant, an email with the

6    subject "Bridgeport Police Chief Search."  Attached were the

7    finalized questionnaire and essay questions that

8    Consultant-1 intended for use in the Written Exam stage of

9    the police chief Examination Process, along with the

10   associated scoring guide, which set forth the points to be

11   awarded for various types of answers on the candidates'

12   questionnaires.  Consultant-1 noted in the body of the email

13   that the attachments were "confidential."  Notwithstanding

14   that designation as "confidential," DAVID DUNN, the

15   defendant, then agreed to provide secretly that confidential

16   material to ARMANDO J. PEREZ, the defendant, to ensure that

17   PEREZ performed favorably on the examination and thus would

18   remain eligible to be in the top three.  In particular,

19   according to a then-BPD officer who worked for and closely

20   with PEREZ ("Officer-1"), PEREZ provided Officer-1 with a

21   scoring guide for the questionnaire."  Did you receive from

22   David Dunn the scoring guide for that questionnaire?

23                 MR. FROST:  Objection, instruct the witness

24            not to answer on the grounds of his Fifth

25            Amendment privilege.

1    BY MR. BUCCI:

2        Q    Chief, I'm going to ask you to go to page 10 --

3    actually, page 10 and 11 which states, "... Consultant-1

4    sent DAVID DUNN, the defendant, an email with the subject

5    "Status."  The email noted that Consultant-1 had received

6    résumés from six applicants.  However, as of that time,

7    ARMANDO J. PEREZ, the defendant, had not yet submitted an

8    application for the chief position.  Later that day, DUNN

9    forwarded Consultant-1's email to PEREZ, including

10   Consultant-1's discussion about the "status" of the process,

11   and asked in his email, "R u ready to mail in your resume?"

12   Do you recall receiving an e-mail from Mr. Dunn asking you

13   are you ready to mail in your resume?

14              MR. FROST:  Same objection and same

15                   instruction; witness is instructed not to answer

16                   the question on the grounds of his Fifth Amendment

17                   privilege.

18   BY MR. BUCCI:

19       Q    Chief, Paragraph 30 says -- that's on page 11,

20   "... shortly thereafter, ARMANDO J. PEREZ, the defendant,

21   directed Officer-1 and another BPD officer who worked for

22   PEREZ ("Officer-2") to help draft PEREZ's résumé and cover

23   letter for the position."  Did you receive help from Mark

24   Straubel and Lieutenant Dickerson in preparing your resume

25   and cover letter for the application process for chief of

1    police?

2                    MR. FROST:  And I will object and instruct

3              the witness not to answer that question on the

4              grounds of his Fifth Amendment privilege.

5                    MR. BUTURLA:  And I'll object as to form.

6    BY MR. BUCCI:

7        Q    Chief, page 11, Number 31 says, "On or about

8    June 5, 2018, ARMANDO J. PEREZ, the defendant, sent

9    Officer-1 and Officer-2 an email invitation to a meeting the

10   next day in PEREZ's office, which listed the subject of the

11   meeting as "[Officer 2] – Consultation ... the purpose of

12   that meeting was to work on PEREZ's résumé and cover

13   letter."  Chief, on June 5, 2018 did you invite Captain

14   Straubel and Lieutenant Dickerson to a meeting to help work

15   on your resume?

16                   MR. FROST:  Objection, instruct the witness

17             not to answer that question on the grounds of his

18             Fifth Amendment privilege.

19   BY MR. BUCCI:

20       Q    Paragraph 33 reads, Chief, "On or about June 8,

21   2018, Officer-2 ..." that would be –– let's assume it's

22   Officer Dickerson, Lieutenant Dickerson "... sent ARMANDO J.

23   PEREZ, the defendant, an email with the subject "Document

24   Review."  Attached to this email was a draft résumé and

25   cover letter for PEREZ ..."  Chief, on June 8, 2018 did you

1    receive a draft of a resume and cover letter from Lieutenant

2    Dickerson with regard to the application process for the

3    position of chief of police?

4                    MR. FROST:  Objection, instruct the witness

5              not to answer on the grounds of his Fifth

6              Amendment privilege.

7    BY MR. BUCCI:

8        Q    Chief, I'm going to ask you to go to page 12,

9    Paragraph 38 and that reads, "On or about June 18, 2018,

10   Consultant-1 emailed ARMANDO J. PEREZ, the defendant, and

11   the other ten remaining candidates informing them that

12   Consultant-1 had reviewed their resumes and believed they

13   met the minimum qualifications for the position.  As a

14   result, because the police chief position was "under the

15   Bridgeport Civil Service System," a "written test is

16   required."  Consultant-1 further explained that the Written

17   Exam portion of the process consisted of a three-page

18   questionnaire and two essay questions.  Consultant-l's email

19   directed that each candidate had to personally complete the

20   Written Exam.  Specifically, Consultant-1 instructed in her

21   email to PEREZ, "The attached Written Exam/Questionnaire

22   will be graded so please complete yourself and please

23   provide accurate/truthful information."  Similarly, the

24   instructions on the attached written exam provided, "This

25   questionnaire represents a testing process (points will be

1    assigned so complete all questions) and as such you are to

2    complete it yourself.  Similar to an application you need to

3    be truthful; discovery of inaccuracies will be cause for

4    rejection/disqualification."  So do you recall receiving

5    that e-mail from Randi Frank with regard to the essay

6    questions to be completed by yourself?

7              MR. FROST:  Objection, instruct the witness

8              not to answer on the grounds of his Fifth

9              Amendment privilege and also as to form.

10              MR. BUTURLA:  And I'll object as to form as

11              well.

12   BY MR. BUCCI:

13       Q    On page 13, Number 40 says, "... according to

14   Officer-1 ..." and let's assume that's Captain Straubel

15   "... when Consultant-1 emailed the Written Exam to the

16   applicants, ARMANDO J. PEREZ, the defendant, already had

17   both a portion of the Written Exam and the scoring

18   guide ..."  Chief, is that an accurate statement?

19              MR. FROST:  Objection as to form and also

20              instruct the witness not to answer that question

21              on the grounds of his Fifth Amendment privilege.

22              MR. BUTURLA:  I'll object as to form as well.

23   BY MR. BUCCI:

24       Q    Chief, did you have, prior to receiving the

25   communication from Randi Frank, a copy of at least a portion

1    of the written exam?

2                    MR. FROST:  Objection, instruct the witness

3              not to answer that question on the grounds of his

4              Fifth Amendment privilege.

5    BY MR. BUCCI:

6         Q    Chief, again, prior to receiving the communication

7    from Ms. Frank were you in possession of the scoring guide?

8                    MR. FROST:  Objection, instruct the witness

9              not to answer that question on the grounds of his

10             Fifth Amendment privilege.

11   BY MR. BUCCI:

12        Q    Chief, on page 13, 14 and 15, Paragraphs 41, 44,

13   49 through 50 assert that Captain Straubel and Lieutenant

14   Dickerson prepared the responses to the written exam and the

15   essay questions and that you had instructed them to assist

16   in preparing those documents.  Did you receive assistance

17   from Lieutenant Dickerson and Captain Straubel in preparing

18   a response to the written exam and preparing your responses

19   to the essay questions?

20                    MR. BUTURLA:  I'll object as to form.

21                    MR. FROST:  I'll make the same objection and

22             also instruct the witness not to answer that

23             question on the grounds of his Fifth Amendment

24             privilege.

25

1    BY MR. BUCCI:

2        Q    Chief Perez, was your appointment to the position

3    of chief of police through the selection process that

4    Ms. Frank and Mr. Dunn had prepared, was your selection

5    pursuant to a fair process?

6                    MR. BUTURLA:  I'll object as to form.

7                    MR. FROST:  Same objection and also instruct

8              the witness not to answer that question on the

9              grounds of his Fifth Amendment privilege.

10   BY MR. BUCCI:

11       Q    Chief Perez, did you receive unfair advantage in

12   the competition for the -- in the selection process for

13   chief of police in the Bridgeport Police Department?

14                   MR. FROST:  Object and instruct the witness

15             not to answer that question on the grounds of his

16             Fifth Amendment privilege.

17   BY MR. BUCCI:

18       Q    Chief Perez, do you believe that you are a better

19   qualified candidate than Captain Porter for appointment to

20   the position of chief of police in the Bridgeport Police

21   Department?

22                   MR. FROST:  Object and instruct the witness

23             not to answer that question on the grounds of his

24             Fifth Amendment privilege.

25                   MR. BUTURLA:  I'll object as to form.

```
1                    MR. BUCCI:  Chief, that's all I have for now.

2               I will be getting a transcript and moving to

3               compel your testimony to the questions which you

4               took the Fifth Amendment privilege instead of

5               responding upon instructions of your attorney.

6                    MR. BUTURLA:  Chief, I have no questions at

7               this time.

8                    MR. FROST:  I just have one question so the

9               record is complete for purposes of whatever

10              proceedings may follow.

11                            *  *  *  *  *

12                       CROSS EXAMINATION

13       BY MR. FROST:

14          Q    Mr. Perez, I'm your counsel and at various points

15       in this deposition I instructed you not to answer certain

16       questions on the grounds of your Fifth Amendment privilege.

17       Is it the case that you were following that advice but also

18       on your own invoking that privilege on the advice of

19       Counsel?

20          A    Yes, it was.

21          Q    In response to those questions as the transcript

22       will reflect?

23          A    Yes, it was.

24                   MR. FROST:  That's all.

25                   MR. BUCCI:  Thank you.
```